# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOGAN LANDRY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8444** |
| **POSIGEN, INC., ET AL.** | **SECTION "B"(5)** |

### ORDER AND REASONS

There are three pending motions in this case. Defendants filed a motion to strike certain paragraphs from Plaintiff Logan Landry's original petition for damages (Rec. Doc. 1-1). Rec. Doc. 4. Landry timely filed an opposition. Rec. Doc. 14. Defendants also filed a motion to dismiss Landry's petition for damages. Rec. Doc. 5. Landry again timely filed an opposition. Rec. Doc. 13. Landry, along with Plaintiff BLG Innovative Solutions, LLC, then filed an amended complaint. Rec. Doc. 12. Defendants filed a motion to dismiss the amended complaint. Rec. Doc. 29. Plaintiffs Landry and BLG filed an opposition. Rec. Doc. 33. Defendants then sought, and were granted, leave to file a reply. Rec. Doc. 38.

For the reasons discussed below,

**IT IS ORDERED** that Defendants' motion to dismiss the amended complaint (Rec. Doc. 29) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss the petition for damages (Rec. Doc. 5) is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike (Rec. Doc. 4) is **GRANTED IN PART** and **DENIED IN PART**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case stems from a dispute between Plaintiff Logan Landry and Defendant PosiGen[1] over whether PosiGen violated Landry's employment contract by failing to pay bonuses, award stock options, and allow Landry to work out of a satellite office. *See* Rec. Doc. 12 ¶¶ 45-70, 84-105. But Plaintiffs Landry and BLG Innovative Solutions, LLC claim that this is not just an employment dispute. Plaintiffs have also brought federal Racketeer Influenced and Corrupt Organizations (RICO) claims, alleging that the violations of Landry's employment contract are one part of a larger scheme to defraud that is currently being carried out by Defendant Thomas Neyhart, a PosiGen executive and partial owner. *See id.* ¶¶ 14-70.

PosiGen is a solar energy company. *See id.* ¶ 14. It purchases equipment that produces solar energy, leases that equipment to residential customers, and installs the equipment at customers' homes. *See id.* ¶¶ 14, 17. This work sometimes requires a contractor's license, which Neyhart obtained in 2011 for Green Grants, a predecessor to PosiGen. *See id.* ¶ 20. The license application asked whether any principal of the applicant had been convicted of a crime. *See id.* ¶ 21. Neyhart was a principal of

---

[1] The defendants in this case include five related entities: PosiGen, Inc.; PosiGen, LLC; PosiGen GP, LLC; PosiGen Energy Efficiency of Louisiana, LLC; PosiGen of Louisiana, LLC. *See* Rec. Doc. 12 ¶¶ 6-10. Landry's employment contract was signed by Defendant Thomas Neyhart on behalf of PosiGen of Louisiana, LLC. *Id.* at 10. But the contract states that Landry will "serve as the Regional Director of Operations for [PosiGen of Louisiana, LLC] and its affiliates . . . ." *Id.* at 2. Therefore, except where otherwise appropriate, the Court will refer to the five PosiGen Defendants, collectively, as PosiGen.

Green Grants and had previously pled guilty to battery, but Neyhart did not disclose this information on the application. *See id.* ¶¶ 19, 21. Neyhart submitted the application by mail. *See id.* ¶ 22.

PosiGen has multiple streams of income. *See id.* ¶¶ 17, 25-26. Customers who lease solar equipment make monthly payments to PosiGen. *See id.* ¶ 17. PosiGen also obtains tax credits from federal and state government programs created to encourage solar energy production. *See id.* ¶¶ 25-26. The tax credits are paid per completed installation of solar equipment. *See id.* ¶ 27. To receive the credit, applicants must submit a packet of information to the relevant tax authority for each completed installation. *See id.*

Beginning in 2012, and continuing today, Neyhart allegedly caused PosiGen to submit tax credit applications for some installations that were still in progress and others that were never completed. *See id.* ¶¶ 31-36. Plaintiffs also allege that Song Yi, PosiGen's CFO, knew of Neyhart's scheme and aided Neyhart in submitting the fraudulent applications. *See id.* ¶¶ 31, 81. On average, PosiGen schedules 150 installations per month and, according to the complaint, Neyhart normally caused PosiGen to prematurely submit tax credit applications for 75 to 80 of those scheduled installations. *See id.* ¶¶ 30, 34. To hide the fact that PosiGen is submitting tax credit applications for more installations than it actually completes, Neyhart purportedly

causes PosiGen employees to conceal excess inventory and manipulate inventory records. *See id.* ¶ 42.

In 2014, Neyhart approached Landry about purchasing BLG's assets, including BLG's customer list. *See id.* ¶¶ 47, 49. PosiGen and BLG were business competitors and Landry was a majority owner of BLG. *See id.* ¶¶ 45, 46. Landry and Neyhart reached a deal, through negotiations over the phone and by mail, in which BLG would sell its assets to PosiGen, and PosiGen would pay BLG cash and hire Landry. *See id.* ¶¶ 51-52, 56-57, 62. Landry agreed to sell BLG's assets for a below-market cash price in exchange for more generous compensation while employed at PosiGen, including annual bonuses, stock options, and the opportunity to work out of an office near his home. *See id.* Neyhart allegedly did not intend to honor these generous compensation terms when he agreed to purchase BLG's assets for a below-market price. *See id.* ¶ 65. PosiGen ultimately failed to pay annual bonuses, award stock options, or allow Landry to work from an office near his home. *See id.* ¶¶ 86-87.

Landry resigned from PosiGen in August 2016 and filed the instant lawsuit in August 2017. *Id.* ¶ 70. The lawsuit asserts two federal RICO claims against Neyhart and various state law claims against Neyhart and PosiGen. *See* Rec. Doc. 12. After Landry initiated the lawsuit, PosiGen repeatedly contacted Landry and Landry's current employer to urge Landry to stop the instant legal

proceedings. *See id.* ¶¶ 117-126. Counsel for Neyhart also contacted Landry's current employer with similar requests. *See id.* ¶ 127.

## LAW AND ANALYSIS

### A. Motion to dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'"[2] *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether a plaintiff has met his burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))(some internal citations and quotation marks omitted).

---

[2] Defendants filed a motion to dismiss Plaintiffs' petition for damages, which Defendants had previously removed from state court. *See* Rec. Doc. 5. Plaintiffs then filed an amended complaint, which stated anew their claims against Defendants. *See* Rec. Doc. 12. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). That being said, a defendant who has filed an initial motion to dismiss does not need to file another motion to dismiss when a plaintiff amends a complaint. *See* 6 Wright & Miller, Federal Practice and Procedure § 1476 (2005). But here, Defendants filed a second motion to dismiss directed at the amended complaint. *See* Rec. Doc. 29. Therefore, because Plaintiffs' petition for damages has "no legal effect" and Defendants have filed a motion to dismiss Plaintiffs' amended complaint, Defendants' initial motion to dismiss (Rec. Doc. 5) is moot.

## 1. Federal Law Claims

Federal law prohibits "any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). It also makes it "unlawful for any person to conspire to" commit a RICO violation. *Id.* § 1962(d). The law creates a private civil remedy to aid enforcement. "Any person injured in his business or property by reason of a [RICO] violation . . . may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." *Id.* § 1964(c). Plaintiffs allege that Neyhart (1) violated 18 U.S.C. § 1962(c) by using his position as an executive at PosiGen to engage in a long-running scheme to defraud and (2) violated 18 U.S.C. § 1962(d) by conspiring with the PosiGen CFO to carry out the scheme to defraud. *See* Rec. Doc. 12 ¶¶ 14-70, 80-83.

RICO claims that sound in fraud are subject to the heightened pleading standard set out in Federal Rule of Civil Procedure 9. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992). Rule 9 requires a plaintiff who "alleg[es] fraud" to "state with particularity the circumstances constituting fraud . . . ," but allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R.

Civ. P. 9(b). To meet this burden, a plaintiff must plead "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic*, 975 F.2d at 1139. That being said, the burden under Rule 9(b) is "relaxed" "when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge," in which case, "fraud may be pled on information and belief, provided the plaintiff sets forth the factual basis for his belief." *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) *abrogated on other grounds by U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).

To state a civil RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must plead a (1) RICO person, (2) RICO enterprise, and (3) pattern of racketeering activity. Plaintiffs must also establish standing, namely that Plaintiffs were "injured in [their] business or property by reason of a [RICO] violation . . . ." 18 U.S.C. § 1964(c). Defendants do not contest the first two elements. *See* Rec. Doc. 29-1 at 11-12. Plaintiffs allege that Defendant Neyhart is the RICO "person" and that PosiGen of Louisiana, LLC, is the RICO "enterprise."[3] *See* Rec. Doc. 12 ¶¶ 5-

---

[3] To plead a claim under 18 U.S.C. § 1962(c), the RICO person must be "employed by or associated with [the RICO] enterprise . . . ." Plaintiffs have plead that Neyhart is the President and partial owner of PosiGen of Louisiana, LLC. *See* Rec. Doc. 12 ¶ 5. Defendants do not contest the sufficiency of this allegation.

6. A "person" "includes any individual . . . capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Plaintiffs have pled that Neyhart is an individual who holds interests in property. *See, e.g.*, Rec. Doc. 12 ¶ 5. An "enterprise" "includes any . . . partnership, corporation, association, or other legal entity . . . ." 18 U.S.C. § 1961(4). Plaintiffs have pled that PosiGen of Louisiana is a limited liability company. *See, e.g.*, Rec. Doc. 12 ¶ 6. Therefore, Plaintiffs have met their burden with respect to the first two elements of their RICO claims.

The third element is more hotly debated. A "pattern of racketeering activity" "requires at least two acts of racketeering activity" to occur within ten years of each other. 18 U.S.C. § 1961(5). In addition to showing the requisite number and frequency of predicate acts, "a plaintiff . . . must [also] show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiffs allege that Neyhart has engaged in a "pattern of racketeering activity" since 2011 by committing various acts of mail and wire fraud when obtaining a contractor's license, applying for tax rebates, and purchasing BLG's assets. *See* Rec. Doc. 12 ¶¶ 19-70.

Mail[4] and wire[5] fraud are acts of racketeering activity, *see* 18 U.S.C. § 1961(1)(B), but Defendants argue that Plaintiffs' complaint does not satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), *see* Rec. Docs. 29-1 at 12-13, 30-31; 38 at 10-11. "Mail fraud . . . occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting to do so.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information."[6] *Bridge*, 553 U.S. at 647 (internal citation and quotation marks omitted). Wire fraud shares the same structure as mail fraud, the only difference being the use of wires instead of the mail. *See, e.g.*, *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987); *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999).

"A scheme to defraud is measured by a nontechnical standard, rooted in notions of moral uprightness, fundamental honesty, fair

---

[4] *See* 18 U.S.C. § 1341.
[5] *See* 18 U.S.C. § 1343.
[6] Defendants assert that Plaintiffs must also plead reliance on each instance of mail and wire fraud, *see* Rec. Docs. 29-1 at 13; 38 at 2, but the Supreme Court has expressly rejected such a requirement, *see Bridge*, 553 U.S. at 647-50.

play, and right dealing." *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 639 (E.D. La. 2016)(citing *United States v. Bruce*, 488 F.2d 1224, 1229 (5th Cir. 1973)). "Although this standard is broad, a scheme to defraud must involve fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Robinson*, 191 F. Supp. 3d at 639-40 (citing *United States v. Netterville*, 553 F.2d 903, 909 (5th Cir. 1977)).

Plaintiffs' allegations of mail and wire fraud are barely sufficient to meet the heightened pleading requirements of Rule 9(b), given that some of the details of Neyhart's alleged scheme are inaccessible to Plaintiffs absent discovery. Plaintiffs divide the scheme into three parts: the fraudulent acquisition of a contractor's license, the fraudulent receipt of tax credits, and the fraudulent purchase of BLG's assets. With respect to the first part, Plaintiffs allege that, in 2011, Neyhart lied about a 2002 criminal conviction on question six of an application for a contractor's license, which was necessary for the operation of Neyhart's business. *See* Rec. Doc. 12 ¶¶ 19-22.

With respect to the second part, Plaintiffs allege that, since 2012, Neyhart has directed employees of PosiGen of Louisiana to submit inaccurate applications for tax credits to federal and state authorities. *See* Rec. Doc. 12 at 5-8. Plaintiffs allege the type of inaccurate information sent to the IRS, when during the month

10

the information is sent, the department at PosiGen of Louisiana that transmits the information, a reasoned estimate of the number of inaccurate submissions per month, and the various means by which Neyhart prevented others from learning of his scheme to defraud. *See id.* ¶¶ 25-44. However, Plaintiffs' allegations about Defendant's allegedly fraudulent submissions to state tax authorities are addressed in a single sentence that contains no detail. *See id.* ¶ 41. Even when Rule 9 is relaxed, and a plaintiff may plead fraud on information and belief, a plaintiff must plead facts to suggest that information and belief is reasonable. *See U.S. ex rel Russell*, 193 F.3d at 308. The allegations about the fraudulent state tax credits contain no detail and cannot substantiate Plaintiff's information and belief. Therefore, Plaintiffs' RICO claims must proceed based solely on the alleged fraud against the federal tax credit program.

Finally, with respect to the third part, Plaintiffs allege that, in 2014, Neyhart made material untrue representations to Landry in order to acquire BLG's assets for a below-market price. *See* Rec. Doc. 12 ¶¶ 45-70. Specifically, Plaintiffs identify allegedly false statements about Neyhart's intention to pay bonuses, award stock options, and allow Landry to primarily work from an office in Houma, Louisiana. *See id.* ¶¶ 51-54. Throughout, Plaintiffs identify uses of mail and wires to facilitate this scheme to defraud. *See, e.g.*, *id.* ¶¶ 22, 33, 56-57. As required,

Plaintiff's amended complaint sets out the who, what, when, where, why, and how of Neyhart's alleged scheme. *See Tel-Phonic*, 975 F.2d at 1139. These allegations meet the requirements of Rule 9(b) with respect to Plaintiffs' allegations of mail and wire fraud. *See id.* (holding that a pleading sufficiently stated claim for mail fraud under Rule 9(b) because the pleading stated that defendant wrote a letter on a certain date containing false representations meant to induce plaintiffs to act).

Having pled the requisite number and frequency of predicate RICO acts, Plaintiffs must also plead that the predicate acts are related and continuous. Predicate acts are related when they "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Without citing any case law, Defendants argue that the alleged predicate acts are not related. *See* Rec. Docs. 29-1 at 14-16, 38 at 1-3. But as Plaintiffs point out, the three alleged predicate acts share many similarities. See Rec. Doc. 33 at 6-7. All advance the purported goal of increasing the value of PosiGen of Louisiana to its shareholders. All were committed by or at the direction of Neyhart. All were facilitated by dishonest representations to innocent third parties. These similarities are sufficient to meet the low bar of the relatedness test, especially at the motion to dismiss

stage. See *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1167-68 (5th Cir. 1991); *Landry v. Air Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 433 (5th Cir. 1990); *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d. 631, 662 (S.D. Tex. 2016).

The continuity requirement, which "is both a closed- and open-ended concept," is met by "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241-42. "The continuity requirement . . . is satisfied where it is shown that the predicates are a regular way of doing business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 242-43. Plaintiffs argue that the fraudulent tax scheme and fraudulent purchase of BLG's assets are part of Neyhart's ongoing use of PosiGen of Louisiana to enrich that company's investors. Such allegations sufficiently plead the continuity requirement at the motion to dismiss stage of proceedings because they allege that the predicate acts are part of PosiGen's ongoing business practices. *See id.* at 249-50.

Defendants argue that even if Plaintiffs sufficiently plead a pattern of racketeering activity, the pattern is not sufficiently distinct from the RICO enterprise. *See* Rec. Docs. 29-1 at 18-19; 38 at 4. But contrary to Defendants' assertion, Plaintiffs do not

13

allege that PosiGen of Louisiana is a fraudulent enterprise, only that Neyhart conducts some of the company's business fraudulently. *See* Rec. Doc. 12 ¶ 30. Plaintiffs acknowledge that some of PosiGen of Louisiana's business activities are legitimate. *See id.* Therefore, Plaintiffs have sufficiently pled the three core RICO elements, (1) a RICO person, (2) a RICO enterprise, and (3) a pattern of racketeering activity. The final requirement is standing.

As discussed previously, a plaintiff can bring a civil RICO claim when he has been "injured in his business or property by reason of a [RICO] violation . . . ." 18 U.S.C. § 1964(c). Plaintiffs claim that they suffered financial injury when Neyhart fraudulently purchased BLG's assets at a below-market price and fraudulently negotiated Landry's employment contract. Rec. Doc. 12 ¶ 77. Defendants do not dispute that Plaintiffs have alleged a financial loss. *See* Rec. Doc. 29-1 at 17. Rather, Defendants dispute whether Plaintiffs have sufficiently pled that their financial loss was caused by Neyhart's alleged racketeering activities. *See* Rec. Docs. 29-1 at 17-18, 38 at 3-4.

As discussed above, Plaintiffs have adequately pled, albeit minimally, that Neyhart's allegedly fraudulent purchase of BLG's assets and negotiation of Landry's employment contract are part of a pattern of racketeering activity. Plaintiffs also pled that they lost money by relying on Neyhart's fraudulent representations when

14

agreeing to the asset sale and employment contract. Plaintiffs have sufficiently pled but for and proximate causation because they allege that Neyhart's RICO activities (the fraudulent purchase of BLG's assets and fraudulent negotiation of Landry's employment contract) directly caused Plaintiffs' losses. *See Allstate Inc. Co. v. Plambeck*, 802 F.3d 665, 676-77 (5th Cir. 2015). As a result, Plaintiffs have adequately pled a civil RICO violation under 18 U.S.C. § 1962(c).

Plaintiffs also allege that Neyhart was part of a RICO conspiracy with PosiGen CFO Song Yi. *See* Rec. Doc. 12 ¶ 81 (referring to a violation of 18 U.S.C. § 1962(d)). But while Plaintiffs state that Yi "agreed with the objectives of [Neyhart's] schemes and agreed to assist him in carrying them out[,]" the amended complaint sets out no facts to support this assertion. *See* Rec. Doc. 12 ¶¶ 80-83. Plaintiffs only offer that "Neyhart and Yi had a close working and business relationship" such that they "conferred . . . about all financial matters" at PosiGen of Louisiana. Rec. Doc. 12 ¶ 81. But these facts do not support the assertion that Neyhart and Yi knowingly reached an agreement to commit the predicate offenses. The facts describe the CEO and CFO of a company working together, as intended, to carry out the company's business. Therefore, Plaintiffs fail to state a claim under 18 U.S.C. § 1962(d) for conspiracy to commit a RICO offense. *See Bell Atlantic*, 550 U.S. 556-57 ("The need at the pleading stage

for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'").

### 2. State law claims

Plaintiffs assert a variety of state law claims, each of which will be addressed in turn. First, Plaintiffs allege that Defendants breached Landry's employment contract by moving Landry's office from Houma to New Orleans, failing to pay annual bonuses, and refusing to award stock options. Rec. Doc. 12 ¶¶ 84, 86, 87. "The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 10-0986 pp. 14-15 (La. App. 4 Cir. 2/9/11); 68 So. 3d 1099, 1108-09. Plaintiffs' amended complaint states that the parties signed an employment contract obligating Defendants to pay Landry a salary of $175,000 per year for two years, make Landry eligible for a bonus program, enroll Landry in a stock option program starting in January 2015, and allow Landry to work from an office in Houma. *See* Rec. Docs. 12 ¶¶ 84; 12-1 at 2-3. Plaintiffs allege that Defendants then breached the employment contract. Rec. Doc. 12 ¶¶ 86, 87. Plaintiffs claim damages from this breach in that Landry is owed unpaid bonuses, due stock options, and suffered added

stress and expense from his elongated commute. Rec. Doc. 12 ¶¶ 86, 87.

However Landry's employment contract, which was attached as an exhibit to the amended complaint, does not mention Landry's eligibility for bonus payments. *See* Rec. Doc. 12-1. Therefore, because the employment contract does not obligate Defendants to pay Landry bonuses, Plaintiffs cannot base their breach of contract claim on unpaid bonuses. Regardless, Plaintiffs adequately state a claim for breach of contract based on the unawarded stock options and the change in Landry's office location. Plaintiffs also attempt to bring a claim for breach of the covenant of good faith and fair dealing. Rec. Doc. 12 ¶ 108. But while a defendant's bad faith actions may be relevant for determining damages, there is no independent claim for acting in bad faith. *See Favrot*, 68 So. 3d at 1109-10.

Second, Plaintiffs allege that Defendants were unjustly enriched when they failed to pay Landry bonuses that he was due under his employment contract. Rec. Doc. 12 ¶¶ 84, 87, 109. In Louisiana, "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code art. 2298. But that "remedy . . . is subsidiary and shall not be available if the law provides another remedy for the impoverishment . . . ." *Id.* In this same case, Plaintiffs seek payment of the same allegedly unpaid bonuses under breach of

contract and detrimental reliance theories. *See* Rec. Doc. 12 at ¶¶ 84, 107. Regardless of whether Plaintiffs will succeed on these other theories, the existence of other potential remedies precludes Plaintiffs from stating a claim for unjust enrichment. *See Walters v. MedSouth Record Mgmt., LLC*, 10-0352, pp. 2-3 (La. 6/4/10); 38 So. 3d 241, 242.

Third, Plaintiffs allege that Defendants breached their fiduciary duty to Landry "by withholding monies known to be owed to [him]." Rec. Doc. 12 ¶ 110. "As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *Scheffler v. Adams and Reese, LLP*, 06-1774, p. 6 (La. 2/22/17); 950 So. 2d 641, 647. "The defining characteristic of a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler*, 950 So. 2d at 648. An employer does not normally owe a fiduciary duty to an employee. *See Safford v. PaineWebber, Inc.*, 730 F. Supp. 15, 18-19 (E.D. La. 1990). Plaintiffs plead no facts to suggest that the employment relationship between PosiGen and Landry was marked by a notable amount of trust or confidence. Plaintiffs have therefore failed to state a claim for breach of fiduciary duty.

Fourth, Plaintiffs allege that Defendants committed the tort of intentional infliction of emotional distress by repeatedly

asking Landry to take unethical and illegal actions to advance the fraudulent tax rebate scheme. Rec. Doc. 12 ¶¶ 97, 112. To state a claim for intentional infliction of emotional distress, Plaintiffs must show "(1) that the conduct of [Neyhart] was extreme and outrageous; (2) that the emotional distress suffered by [Landry] was severe; and (3) that [Neyhart] desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

Plaintiffs have not met their burden. Plaintiffs do not even state that Landry suffered severe emotional distress from the repeated requests for him to participate in the tax rebate scheme. *See* Rec. Doc. 12 ¶ 97. Therefore, Plaintiffs certainly fail to state facts sufficient to plead such a claim. Nor do plaintiffs plead any facts about Neyhart's intent or state of mind when making these allegedly distressing requests. *See id.* Plaintiffs have therefore failed to state a claim for intentional infliction of emotional distress.

Fifth, Plaintiffs allege that, under a theory of detrimental reliance, Landry is owed damages for Defendants' failure to honor the terms of Landry's employment contract. *Id.* ¶ 114. In Louisiana, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so

relying." La. Civ. Code art. 1967. To state a claim for detrimental reliance, Plaintiffs must allege "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *La. Office of Risk Mgmt. v. Richard*, 13-0890 p. 5 (La. 10/15/13); 125 So. 3d 398, 402.

Plaintiffs have met their burden. They allege that Landry was promised payment of performance bonuses, awards of stock options, and the ability to work from Houma. Rec. Doc. 12 ¶ 84, 86. They allege that Landry relied on these promises when deciding to sign the employment contract and sell BLG's assets. Rec. Doc. 12 ¶ 61. This reliance was justifiable because the promises about compensation and work location were reasonable in the context of the larger negotiation between Landry and Defendants, especially those promises that were confirmed in the written employment contract.[7] Finally, Plaintiffs plead a change in position by alleging that, in reliance on Defendants' promises, Landry entered into a two-year employment contract with non-competition

---

[7] As discussed previously, Landry's employment contract does not entitle Landry to performance bonuses. *See* Rec. Doc. 12-1. However, Plaintiffs plead various other times when Landry was promised bonus payments. *See* Rec. Doc. 12 ¶¶ 87, 98. Plaintiffs allege that some of these payments were made after Landry's employment contract had expired, when Landry could have left PosiGen without repercussion. *See id.* Plaintiffs allege that Landry chose to stay at PosiGen and earn less money because of these promises, which were at least partially confirmed in writing. *See* Rec. Doc. 12 ¶¶ 87-88, 98-99. Therefore, while Landry cannot rely on the employment contract to support a claim for unpaid bonuses, Plaintiffs still state a claim for detrimental reliance based on Landry's reasonable reliance on subsequent promises. *See Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459, p. 31 (La. 4/12/05); 907 So. 2d 37, 59 ("Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract.").

provisions and sold BLG's assets for a below-market price. Rec. Doc. 12 ¶¶ 61, 63.

Sixth, Plaintiffs allege that Defendants' fraudulent representation that Landry could participate in a PosiGen stock option program induced Landry to sell BLG's assets to PosiGen at a below-market rate. Rec. Doc. 20 ¶ 115. The prescriptive period for a delictual action like fraudulent inducement is one year from when Landry learned that he would not be able to participate in a stock option program. *See* La. Civ. Code art. 3492. Landry's employment contract stated that the stock option program would be created on January 1, 2015. Rec. Doc. 12-1 at 3. Therefore, Landry learned that Defendants' representations were false no later than January 1, 2015. Plaintiffs did not bring their fraudulent inducement claim until August 8, 2017, long after the prescriptive period had elapsed. Plaintiffs have therefore failed to state a claim for fraudulent inducement.

Seventh, Plaintiffs allege that Defendants' communications with Landry and Landry's current employer violated the Louisiana Unfair Trade Practices Act (LUTPA) and amounted to tortious interference with Landry's employment. Rec. Doc. 12 ¶¶ 117-30. Plaintiffs need to allege damages to state either claim.[8] *See 9 to*

---

[8] Plaintiffs acknowledge in their opposition memorandum that the same would be true if, as Plaintiffs suddenly assert, Virginia law were applicable. *See* Rec. Doc. 33 at 23 (citing *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (2014)).

*5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989) (tortious interference with contract); La. Stat. § 51:1409 (LUTPA). But Plaintiffs' complaint does not allege that Landry has suffered damages from Defendants' communications with Landry's current employer. Therefore, Plaintiffs have failed to state a claim either under LUTPA or for intentional interference with contract.

Finally, Plaintiffs assert a claim for conspiracy, but conspiracy is not an independent cause of action in Louisiana. *See Ross v. Conoco, Inc.*, 02-0299, pp. 7-8 (La. 10/15/02); 828 So. 2d 546, 551-52. Rather, Louisiana imposes in solido liability on those who conspire "to commit an intentional or willful act . . . ." La. Civ. Code art. 2324. Therefore, Plaintiffs cannot state a stand-alone claim for conspiracy.

**B. Motion to strike**

Under Federal Rule of Civil Procedure 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Granting a motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962). As a result, a "motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Id*. Here, Defendants seek to strike various

statements from Plaintiffs' pleadings for being immaterial, impertinent, or scandalous.[9] *See* Rec. Doc. 4-1 at 4-10.

Specifically, Defendants object to allegations that (1) Neyhart was convicted of a felony, but did not disclose the conviction on an application for a state contractor's license (*see* Rec. Docs. 1-1 ¶¶ 36-39; 12 ¶¶ 19-22); (2) Defendants were large contributors to political candidates in Louisiana in 2014 (*see* Rec. Doc. 1-1 ¶ 40); (3) Defendants had been previously sued for racial discrimination and failure to pay employee bonuses (*see* Rec. Docs. 1-1 ¶¶ 30-35; 12 ¶¶ 92-96); (4) Neyhart operated PosiGen fraudulently (*see* Rec. Docs. 1-1 ¶¶ 26-28; 12 ¶¶ 25-44); and (5) Neyhart was a large minority owner of Posigen (*see* Rec. Docs. 1-1 ¶¶ 19-20; 12 ¶ 5).

The allegation about Defendants' political contributions is omitted from Plaintiffs' amended complaint, *compare* Rec. Doc. 1-1 *with* Rec. Doc. 12, indicating that it is immaterial to Plaintiffs' claims. Therefore, the allegations about political contributions (Rec. Doc. 1-1 ¶ 40) may be stricken as wholly unrelated to the instant litigation. *See* *Augustus*, 306 F.2d at 868. Also, Plaintiffs' allegation that Defendants were previously sued for racial discrimination (*see* Rec. Docs. 1-1 ¶ 30; 12 ¶ 89) has no

---

[9] Plaintiffs filed their amended complaint (Rec. Doc. 12) after Defendants filed their motion to strike (Rec. Doc. 4). The Court considered Defendants' motion to strike as it applied to Plaintiffs' original and amended pleadings.

connection to Plaintiffs' claims, which center on Defendants' allegedly fraudulent behavior. *See Augustus*, 306 F.2d at 868.

However, allegations about Neyhart's criminal history, Neyhart's fraudulent business activities, PosiGen's ownership structure, and Defendants' prior violations of employment contracts all directly relate to Plaintiffs' claims—especially those that arise out of Defendants' allegedly fraudulent negotiation of Landry's employment contract. *See, e.g.*, Rec. Doc. 12 ¶¶ 45-70. Therefore, these allegations are neither immaterial nor impertinent. *See United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012); *Hoffman v. Bailey*, No. 13-5153, 2017 WL 1969540, at *8 (E.D. La. 2017). Given that these allegations are closely tied to Plaintiffs' claims, they are also not sufficiently scandalous to merit striking them from Plaintiffs' pleadings. *See Coney*, 689 F.3d at 379-80 (explaining that even pleadings that "might offend the sensibilities" of a defendant "are not scandalous [when] they are directly relevant to the controversy at issue and are minimally supported in the record").

New Orleans, Louisiana, this 7th day of February, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE