**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**LOGAN LANDRY, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                            **NO. 17-8444**

**POSIGEN, INC., ET AL.**                             **SECTION "B"(5)**

## ORDER AND REASONS

Defendants PosiGen, Inc. et al filed a motion for summary judgment on liability. Rec. Doc. 94. Plaintiffs filed a response in opposition. Rec. Doc. 220. Defendants sought, and were granted, leave to file a reply. Rec. Doc. 228.

For the reasons discussed below,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED in part** and plaintiffs' federal claims are **DISMISSED.**

**IT IS FURTHER ORDERED** that plaintiffs' remaining state law claims are **REMANDED** to state court for adjudication, including those sought to be urged by recent late amendment.[1]

**IT IS FURTHER ORDERED** that plaintiffs' motion to expedite hearing (Rec Doc. 236) is **GRANTED.** The magistrate judge's denial of plaintiffs' motion for leave to amend complaint (Rec. Doc. 230) is **AFFIRMED,** and plaintiffs' objections to same (Rec. Doc. 235) are **OVERRULED.**

---

[1] This removed case emanated from a state court action in the 24th Judicial District Court for the Parish of Jefferson, bearing that Court's case number 774-782 C.

1

**IT IS FURTHER ORDERED** that plaintiffs' "motion to expedite" (Rec. Doc. 232) and defendants' "Motion in Limine to Exclude Certain Evidence at Trial" (Rec. Doc. 241) are **DISMISSED as moot.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises from an employment contract dispute between plaintiff Logan Landry and defendants PosiGen Inc, et al over whether defendants PosiGen violated plaintiff Landry's employment contract by failing to pay him bonuses, award stock options, and forcing him to commute to New Orleans for work. In their amended complaint, plaintiffs bring federal Racketeer Influenced and Corrupt Organizations (RICO) claims against defendants, alleging that defendant Thomas Neyhart, owner, president, and director of PosiGen of Louisiana LLC, has been running a number of fraud schemes involving submitting false tax credit requests to the federal government, fraudulently inducing BLG to sell its customer lists and assets to PosiGen La, and forcing Landry to participate in the tax credit fraud scheme. Rec. Doc. 12. The facts of defendants' alleged scheme are laid out in greater detail in an earlier Order and Reasons issued by this Court and are incorporated by reference here. Rec. Doc. 54.

Three claims remain in this lawsuit: plaintiffs' claim that Neyhart violated RICO and caused them damages by operating PosiGen LA through a pattern of mail and wire fraud; (2) Landry's claim that defendants breached his employment contract by requiring him

2

to travel to New Orleans for work and not awarding him stock options; and (3) Landry's claim that he relied to his detriment on promises defendants made to him relating to his office location, stock options, and bonuses when deciding to accept employment with PosiGen LA. Rec. Doc. 94 at 1.

The Court recently granted in part and denied in part defendants' motion for partial summary judgment on damages. Rec. Doc. 221. The Court held that plaintiffs were not entitled to recover damages for: the value of BLG's assets they allege were lost when plaintiffs were fraudulently induced to sell BLG's assets to PosiGen LA, the value of Delta Sky Miles, and emotional distress damages for fraud. Rec. Doc. 221. The Court also held that plaintiffs may be entitled to recover damages for unpaid bonuses pursuant to their detrimental reliance and RICO claims, and attorneys' fees under RICO. Id.

Defendants filed the instant motion for summary judgment on liability, arguing that they are entitled to summary judgment dismissing plaintiffs' RICO claims, breach of contract claims, and detrimental reliance claims because plaintiffs have no evidence in support of their remaining claims. Rec. Doc. 94. Plaintiffs filed a response in opposition asserting that they have provided competent summary judgment evidence to demonstrate a genuine dispute of material fact in support of those claims. Rec. Doc. 220.

**PARTIES' CONTENTIONS**

Defendants argue entitlement to summary judgment on the RICO claim because plaintiff cannot prove that Neyhart or PosiGen LA engaged in any racketeering activity, or a pattern of such activity. Id. at 2. Defendants assert that plaintiff has no evidence that Neyhart knowingly and intentionally misrepresented the nonexistence of a prior battery by fighting conviction on Green Grant LLC's application for residential and commercial contractor licenses, with the intent to obtain unjust advantage or as part of a scheme to defraud. Rec. Doc. 94-1 at 11. Defendants also assert that plaintiffs have no evidence to support their original claim in the amended complaint that Neyhart, through PosiGen LA, used interstate wires or the mail to file fraudulent tax credit "requests," "packets," or "submissions" with the IRS. They submit that documents do not need to be assembled into "packets" to obtain a federal tax credit and defendants have attested that they are not aware of any person transmitting any "tax credit packet" to the IRS. Id. at 13- 15. Defendants assert that plaintiffs have no evidence for the new claims, not alleged in the amended complaint, that Neyhart directed contractors to falsify the placed-in-service date on documents, or that their accounting firm, Wegmann, relied on placed-in-service dates to prepare federal tax returns claiming the ITC. Rec. Doc. 228 at 5. Defendants further argue that plaintiffs have no evidence that Neyhart made misrepresentations

4

to Landry about the terms of his employment or the purchase price PosiGen LA would pay for BLG's assets during a phone call while Landry was in Vegas. Neyhart has no recollection of this phone call and plaintiffs cannot remember what was said on the call or identify anything Neyhart said that was untrue. Rec. Doc. 94-1 at 16-17. Defendants argue that plaintiffs have not proven a pattern of racketeering activity because they cannot show that the three predicate acts described above are related and amount to, or prose a threat of, continued criminal activity. Id. at 17-19.

According to defendants, the breach of contract claim also fails because plaintiffs cannot prove that PosiGen was obligated to award Landry stock options, but only that it was obligated to ensure a stock option program was established in which Landry would be eligible to participate. Rec. Doc. 94-1 at 20. Defendants state that plaintiffs cannot prove that defendants breached Landry's employment contract by requiring him to commute to New Orleans because PosiGen LA was entitled to require him to travel outside of Houma for work and Landry did not suffer compensable damages as a result of the alleged breach relating to his commute. Additionally, defendants argue that plaintiffs cannot prevail on the detrimental reliance claim because they cannot show that defendants promised Landry that he would be awarded stock options, be allowed to work only in Houma, or receive bonuses. Id. at 23. To the extent that plaintiff claims defendants did make these

5

promises, defendants aver that Landry's reliance on the promises is unjustified considering the language in his fully integrated employment agreement does not provide that he will be awarded any stock options, guarantee him the right to work exclusively in Houma, or obligate PosiGen LA to pay him bonuses. Id. at 24. Defendants note that plaintiffs cannot prove that Landry changed his position to his detriment by going to work for PosiGen LA. Id. Finally, defendants state that the other PosiGen entities, PosiGen, Inc., PosiGen, LLC, PosiGen GP, LLC, and PosiGen Energy Efficiency of Louisiana, LLC, were not parties to Landry's employment agreement and should be dismissed from this suit. Id. at 25.

Plaintiffs argue that they have provided enough evidence in support of their RICO, breach of contract, and detrimental reliance claims to defeat summary judgment. Rec. Doc. 220. Plaintiffs ask for an adverse inference against defendants from the invocation of Fifth Amendment rights to remain silent by a non-party, the former president of PosiGen, Daniel McAttee, during the latter's deposition testimony. Id. at 2. Plaintiffs assert that summary judgment is improper in this case because defendants are placing intent at issue in this case, and the jury should be provided an opportunity to review the evidence and evaluate defendants' credibility to determine defendants' intent. Rec. Doc. 220 at 4. Plaintiffs aver that they have demonstrated proof of defendants'

6

mail and wire fraud for each of the alleged fraudulent activities. Id. Plaintiffs assert that they have presented a genuine dispute as to whether Neyhart knowingly and intentionally misrepresented his prior conviction in Green Grants, LLC's application for residential and commercial contractor licenses because Neyhart signed the paperwork and that his then-assistant, June Tureau, told Landry that Neyhart knew of the falsified application when it was submitted. Id. at 5. Plaintiffs also argue that they have sufficiently proven that defendants submitted fraudulent documents to the IRS to obtain tax credits. Id. at 6. Plaintiffs assert that they have demonstrated that defendants requested that installation contractors provide falsified placed-in-service letters, and that defendants' accounting firm, Wegmann Dazet & Company, used the fraudulent information from the placed-in-service letters to prepare and file defendants' federal tax returns. Id. at 6-16. In support of their assertions, plaintiffs provide the depositions of: Matthew Maiello, the former general manager of Gulick, a contractor for defendant-entities; Amanda Bakay, the former Vice President of Human Resources for defendants, and Logan Landry, plaintiff and the former Vice President of Operations for defendants. Id. at 6. Plaintiffs further assert that they have provided evidence to show that defendants made fraudulent representations to plaintiffs when acquiring BLG Innovative Solutions, LLC as supported by the email exchanges between Logan

7

Landry and defendants' employees and executives. Id. at 17-19. Plaintiffs state that they have demonstrated a pattern of racketeering as the predicate acts involve the same participants, method of commission, and were all committed with the purpose of increasing defendants' revenue and profits. Id. at 19.

Plaintiffs assert that their breach of contract claim should not be dismissed because a genuine material factual dispute exists as to whether Landry was promised stock options in his employment contract and requiring Landry to commute to New Orleans breached the plain terms of the contract. Id. at 22-26. Additionally, plaintiffs aver that the detrimental reliance claim should survive because they have shown that defendants made misrepresentations to Landry concerning stock options, office location, and Landry reasonably relied on these representations in accepting the employment with defendants to his own detriment. Id. at 26-32. Finally, plaintiffs state that all the named defendants are necessary parties to this suit as Landry's contract required him to do work for PosiGen LA and all of its affiliates, and there is no meaningful separation between the defendant-entities. Rec. Doc. 32-35.

## **LAW AND ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

8

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618.

A. <u>Federal RICO Claim</u>

RICO claims under § 1962 have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir.2007) (internal quotations omitted). To allege a "pattern of racketeering activity," a plaintiff must show that the defendant

9

committed two or more predicate offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Predicate offenses include violations of certain state and federal laws, including wire fraud and mail fraud statutes. 18 U.S.C. § 1961(1).

Plaintiffs' amended complaint alleges defendants committed the predicate acts of mail fraud and wire fraud when: 1) Neyhart obtained PosiGen LA's contracting license through fraud by failing to disclose a prior conviction, 2) millions of dollars in profit/credits/tax benefits were generated through a fraudulent tax credit scheme: and 3) plaintiffs were fraudulently induced into selling BLG's customer lists and assets to expand the fraudulent tax credit scheme to new customers. Rec. Doc. 12 at 13. The Court considers each of these actions in turn.

1. <u>Alleged Scheme to Hide Neyhart's Conviction from Louisiana Licensing Board</u>

Defendants admit that Green Grant, LLC's application for a contractor license in 2013 did not initially disclose Neyhart's 2002 battery conviction, stating it was an inadvertent error by Neyhart's receptionist, Ms. Tureau, and that Neyhart self-reported the error in March 2014 to the Licensing Board once he discovered it. Rec. Doc. 94-1 at 12. Specifically, defendants assert that to prove Neyhart committed mail or wire fraud, plaintiffs must provide admissible evidence that Neyhart knowingly and intentionally

10

misrepresented the existence of the prior conviction, with the intent to obtain an unjust advantage or as part of a scheme to defraud. Id. at 11. However, defendants argue that plaintiffs have no personal knowledge of what was represented to the Licensing Board, and both individuals who do – Neyhart and Tureau – have attested that the failure to disclose was made in error and not with the intent to gain any unjust advantage or as part of a scheme to defraud. Id. Moreover, the Licensing Board accepted Neyhart's self-reported error with a $1,500 fine upon PosiGen in 2014 and closed the matter, without adverse action against the license at issue. On the other hand, plaintiffs assert that Neyhart signed the application. Furthermore, plaintiffs state Neyhart knew of the falsified application when it was submitted based on Landry's declaration that Tureau told Landry during his employment that Neyhart knew of the falsified application.

Simply showing an omission in the application to the licensing board is not sufficient to establish fraud under RICO. "Among other things, both RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir.2000). Plaintiffs' evidence of an intent to defraud is Landry's self-serving statement in his declaration that Tureau informed him that Neyhart was aware of the undisclosed conviction on Green Grant's contractor license

11

application. Rec. Doc. 220-6 at 2. However, this is inadmissible hearsay evidence and still insufficient to establish plaintiff's claim. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial.") Therefore, plaintiffs have not demonstrated a genuine dispute of material fact in support of their claim that defendants committed mail fraud when submitting Green Grant's contractor license application.

   2. Fraudulent Tax Credit Scheme

The amended complaint alleges Neyhart committed the predicate acts of mail or wire fraud by causing PosiGen LA's accounting department and others "to electronically file/submit hundreds of false billing packets/requests for solar tax credits to the Internal Revenue Service each month." Rec. Doc. 12 at 6. Plaintiffs alleged that Neyhart personally committed or directed others to knowingly falsify installation and completion dates in the "packets/filings/submissions and to then electronically file them with the IRS, utilizing the interstate wires." Id. at 7. Defendants argue that plaintiffs make no showing that Neyhart filed fraudulent tax credit requests, packets, or submission with the IRS in furtherance of a scheme to defraud the government, and do not even know who, what, when, whether, or how any defendant ever sent any information to the IRS. Rec. Doc. 94-1 at 13. Defendants present

as evidence the declaration of the Chief Legal Officer of PosiGen LA, Benjamin Norwood, who states that PosiGen LA has never claimed or received the investment tax credit (ITC), and has never transmitted, nor is aware of any person transmitting, any "tax credit packet" to the IRS by mail or by wire. Rec. Doc. 94-4 at 2. In response, plaintiffs assert they have evidence that defendants obtained falsified "placed in service" letters from installation contractors, and assert that defendants' accounting firm, Wegmann Dazet, used the fraudulent information in these letters to prepare and file defendants' federal tax returns. Rec. Doc. 220 at 6-16. In support of their argument, plaintiffs provide deposition testimony from the general manager of a contractor who conducted energy audits and performed installations for PosiGen, Michael Maiello, stating that PosiGen requested placed-in-service letters be issued when a system had not been placed in service. Rec. Doc. 220-7 at 12. Plaintiffs also provide deposition testimony of defendants' former Vice President of Human Resources, Amanda Bakay, who states that employees told her that PosiGen was counting installations that were not fully placed in service yet. Rec. Doc. 220-5 at 6. Finally, plaintiffs provide deposition testimony of plaintiff Logan Landry, who states that he personally knows that dates were falsified. Rec. Doc. 220-8 at 269.

Plaintiffs have not provided evidence to demonstrate a genuine dispute of material fact in support of their claim that

13

defendants knowingly falsified installation/completion dates in fraudulent billing packets/requests electronically filed with the IRS to claim federal ITC. None of the depositions plaintiffs reference show that defendants submitted false information to the IRS. Plaintiffs' RICO claim, as alleged in their amended complaint, is that defendants perpetrated a fraudulent tax scheme to claim unearned tax credits from the IRS and boost their profits. However, plaintiffs have not offered any evidence to show that defendants submitted any false information to the IRS and obtained such tax credits. The depositions plaintiffs reference may provide some support for the allegation that the placed-in-service letters defendants internally received from contractors did not correlate with completed installation dates. Even if this were true, it still does not provide support for plaintiffs' claims that defendants submitted false information to the IRS and used interstate mail or wires in that regards as part of a scheme to defraud the IRS. The essential element that plaintiffs must prove as part of the RICO claim alleged in the amended complaint is the existence of a scheme to defraud the IRS and claim unearned tax credits. Evidence pertaining to the documents shared solely between contractors and defendant-entities is not relevant to this analysis, unless it also shows that falsified information was submitted to the IRS and tax credits were fraudulently claimed as alleged. Plaintiffs have not provided evidence to show that the placed-in-service letters

provided to PosiGen were used to claim federal tax credits from the IRS. To the contrary, in his deposition Landry stated that he does not know whether it is necessary to provide the IRS with a placed-in-service letter to claim the ITC or whether any PosiGen affiliated entity ever provided any placed-in-service letters to the IRS. Rec. Doc. 220-8 at 265-267. Similarly, Maiello stated that he does not know whether PosiGen LA ever claimed a federal ITC or whether PosiGen relied on any of the information from his company's invoice to determine whether PosiGen was eligible for the tax credit. Rec. Doc. 228-1 at 4-5. Maiello also stated that he did not falsify information on the invoice his company supplied to PosiGen and that he is not aware of anyone falsifying information on any invoice his company supplied to PosiGen. Id. Again, Barkay stated in her deposition that she could not identify any circumstances in which any PosiGen entity ever claimed a federal ITC on a tax return for a system that had not been fully installed. Rec. Doc. 220-5 at 6. Therefore, none of the depositions that plaintiffs identify provide material evidence to show that defendants submitted false information to the IRS and fraudulently claimed federal investment tax credits. Plaintiffs state in their opposition that defendants' accounting firm Wegmann, used information collected with the state tax credit, including placed-in-service letters, to prepare defendants' federal tax returns. Rec. Doc. 220 at 14. However, the deposition of John White,

Wegmann's designated representative, that plaintiffs cite to as support for this assertion only states generally that there is information and documentation that would apply to both state and federal tax filings as the two may overlap. Id. Because this Court dismissed plaintiff's RICO claims with regards to state tax filings, the only relevant information to the case at this stage is the information used to claim federal tax credits. Rec. Doc. 54. White's deposition does not state that Wegmann or defendants used the placed-in-service letters obtained from contractors in preparing federal tax returns, or that any fraudulent information was submitted on such returns. Plaintiffs do not identify any other evidence that could support their assertion. Therefore, plaintiffs have provided no material evidence in support of their claim that defendants submitted fraudulent billing packets and falsified installation/completion in submitting documents to the IRS to claim unearned federal investment tax credits.

3. <u>Scheme to Fraudulently Obtain BLG Assets and Landry's Services</u>

Plaintiffs fail to offer evidence that Neyhart used interstate wires to misrepresent terms of Landry's employment contract, salary, stock options, bonuses, and office location while he was in Las Vegas in March and April of 2014. The amended complaint alleged that Neyhart used interstate wires as part of the scheme to defraud by making promises to Landry he did not

intend to keep concerning the terms of Landry's employment during a phone call while Landry was in Las Vegas in March and April of 2015. Rec. Doc. 12 at 10. Defendants assert that plaintiffs have no proof of any fraudulent misrepresentations made to Landry during such a phone call, because Neyhart does not recall the phone call and Landry testified in his deposition that he did not recall anything that was said to him on the phone that was untrue. Rec. Doc. 94-2 at 17. In their response, plaintiffs aver that they have provided copies of emails sent between Landry and defendants' employees that show discussions concerning his employment contract in May and June of 2015. Rec. Doc. 220 at 17-19.

While the emails may have bearing on plaintiffs' breach of contract or detrimental reliance claims, they do not offer support for plaintiffs' RICO claim as alleged in the amended complaint. Plaintiffs fail to provide material evidence that Neyhart made fraudulent misrepresentations during the Las Vegas call, or that Neyhart had the intent to deceive – both of which are necessary elements of RICO based wire fraud. Landry stated in his deposition that he does not remember that Neyhart said anything untrue to him during the phone call, or the specific details of the call. Rec. Doc. 94-2 at 16-17. At this stage, the allegation in plaintiffs' complaint alone is not enough to allow plaintiffs to survive summary judgment on the RICO claim, without evidence to prove a genuine dispute. Plaintiffs again fail to show evidentiary support

for RICO based allegations concerning Neyhart's alleged wire fraud during the Las Vegas phone call.

Because plaintiffs bear the burden of proof at trial, it is enough for defendants to "merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). This Court finds an absence of a genuine dispute of material fact concerning the federal RICO claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment in favor of defendants is proper on that claim.

Plaintiffs also assert that they should be afforded an adverse inference in connection with the deposition testimony of a non-party witness Daniel McAtee, the former president of PosiGen. As basis, plaintiffs point to McAtee's "blanket" assertions of the Fifth Amendment right to remain silent throughout his deposition. Rec. Doc. 220. However, Fifth Circuit precedent states that the adverse inference drawn from the assertion of the Fifth Amendment does not replace the burden that needs to be met in order to survive summary judgment. *See State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116 (5th Cir. 1990) (citing *Avirgan v. Hull*, 691 F.Supp. 1357 (S.D.Fla. 1988) with approval and finding the adverse inference from a party's refusal to answer insufficient to create an issue of fact to defeat summary judgment); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th. Cir.1999) (citing *State Farm* for its holding that the adverse inference from a party's refusal

to answer questions was not enough to create an issue of fact to avoid summary judgment). Therefore, this Court finds that McAtee's refusal to answer does not create an issue of fact to defeat summary judgment on the federal claim.[2]

B. <u>Remand of remaining state law claims</u>

Because this Court is dismissing plaintiffs' federal claim, the remaining state claims should be remanded to state court. When a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims when the state law claims are "so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(c) enumerates the circumstances in which a district court may refuse to exercise supplemental jurisdiction:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
>   (1)  the claim raises a novel or complex issue of State law,
>
>   (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>   *(3)  the district court has dismissed all claims over which it has original jurisdiction, or*

---

[2] Notably absent in this regard is any referenced attempt by plaintiffs to timely seek judicial review, during or immediately after the deposition, overruling blanket assertions of Fifth Amendment protections and compelling answers from the deponent at issue.

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added). This Court is dismissing with prejudice all federal claims over which it has original jurisdiction, and therefore decline to exercise supplemental jurisdiction over the remaining state claims pursuant to § 1367(c)(3). Accordingly, the remaining state claims are remanded to state court without prejudice.

New Orleans, Louisiana, this 4th day of April 2019

_____
SENIOR UNITED STATES DISTRICT JUDGE